Good morning. May it please the Court. I'm James Laughlin. I represent the appellant Ferrari Moody. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. May I ask you a preliminary question? Sure. On a habeas, what is the standard of review? The standard of review is under 2254d, whether the State court decision is A, an unreasonable application or is contrary to or an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts given the State court record. All right. In determining that, even if the district court incorrectly characterized this claim as one of jury misconduct rather than jury tampering, how do we get around this standard of review if reasonable minds could differ as to whether it was jury tampering or jury misconduct? Well, First Your Honor, I don't think the district court said that this was not jury tampering. I believe they used the phrase jury tampering in drafting the report and recommendation. Second, I don't think that there is a dispute, a reasonable dispute that this is what happened here constitutes jury tampering in light of this Court's authority in other cases where it said that much less egregious conduct has amounted to jury tampering. For example, when agents in a trial were so-called glaring at the jury or when a defendant sitting at the counsel table was eyeballing a juror. Or I think in the United States, such as Duck Tell, this Court said whenever somebody approaches a juror asking to talk about the case, then that amounts to jury tampering. And the Court went on to say that even indirect coercive conduct amounts to jury tampering giving rise to the remor presumption. So I don't think that there happened is jury tampering. And so what happened here, so in your view, is that so there was jury tampering, presumption of prejudice arises. What should have happened next? The government needs to rebut that? Correct. It's a presumption but is rebuttable. The remor, the Supreme Court established law says it's a heavy burden on the government to rebut that. So here's what should have happened. The first thing that should have happened is the district the trial court should have dismissed juror number seven. Because first of all, it did not take into account the remor presumption at that time and neither did the California Supreme Court in denying habeas relief. And therefore the government never presented evidence that would rebut the presumption that would arise when this woman who said that she was, she said that she could be fair, but each time she said that she said she'd be very uncomfortable, particularly if these people were allowed to stay in the courtroom, which based on the record, it looks like they were. The judge, the trial judge was remarkably uninterested in getting to the bottom of what happened. And even though after the report of jury tampering, he asked everybody to identify themselves in the courtroom, he never inquired as to whether the people who were suspected of being the people who followed her home actually did that. He never said you shouldn't do that. He just let things lie where they lay, which I think creates the presumption that juror seven was left uncomfortable. Was there anything in the record that showed that the spectators talked to juror number seven? Yes. I believe in the record the juror number seven was asked to describe the people that she saw following her home and who tried to talk to her. The bailiff then said, that sounds like Lucky and his friend. When the district court then asked everybody to identify themselves in the courtroom, it was established that Lucky is a friend of the murder victim. So the evidence in the record certainly, the respondents made some claim that, well, we didn't have an evidentiary hearing, but certainly for the purposes of a habeas petition, where a petitioner's good faith claims should be established to be true until proven otherwise, for as far as establishing a prima facie case, I think the record establishes that it was the murder victim's friends that followed her home. That being true, what was the evidence that the spectators ever talked to juror number seven? Her own testimony. They followed her home, and they said she was she was Did they follow her home? I'm sorry. Followed on her way home. I'm sorry. They abandoned the pursuit after a couple of miles before reaching her home. And did they talk to her? Yes. They were following in her car, and she said that they were very persistent, such that she could, she was talking to her boyfriend on her car phone and had her window up and head up loud, and she could still hear them over that. And I believe she said something like they said, you know, don't ignore us. We know we can hear you. We can talk now because we're not inside. So it didn't go further than that, but clearly this was two people who were spectators of the trial trying to influence or talk to this juror about the case. How do we know they wanted to talk about the case? I think that's the only reasonable inference that's allowed. I mean, particularly, I mean, particularly given that the woman said also these were the same two men who were trying to talk to jurors outside in the hallway inside the courthouse. So this is, I mean, I think even if you looked at the incident with Juror 7 in isolation, the only reasonable inference was that they wanted to talk to her about the case. But certainly when you view that in the context of these same people were making other overtures towards the jurors to potentially talk about the case, I think that that's the conclusion you have to reach. But as this Court has recognized, I believe in Rutherford, the intent of the people who are making the approach is really irrelevant. What's relevant is the effect on the juror. And certainly, even if it turned out that, as I think that the prosecutor and the trial judge did on her, even if that wasn't her true intent, what matters is Juror 7 or somebody else in that position is going to feel, as she said, very uncomfortable with that kind of attention in a case where both the people associated with the victim and the people associated with the defendant were shown to be or alleged to be very violent. And I think that that creates the kind of, gives rise to the kind of presumption that affect the way somebody participates in jury deliberations, such that the government has a heavy burden to rebut that. Go ahead. I'm sorry. So what do we do with the fact that the prosecutor wanted, I think the prosecutor recognized there was jury tampering. And that's why the prosecutors kept saying, let's have a, let's talk to all the jurors, let's find out what's happened. He was the one pushing for the hearing, which I think should have been held. But the defense counsel said, no, that would, you know, make it worse or could make, impair the proceedings further. And so it seemed to me one of the situations, when I was first on the district court, when the, when I was about to make an error that could be reversible error, the prosecutors would leap up and make sure I didn't make that error. This transcript reads like that. Well, yes, I agree with Your Honor. First, that the prosecutor clearly did recognize that a further hearing was required because something fishy was going on. It was impossible for the court to conclude with the evidence that it had that there was no danger of this affecting the jury deliberations. Two, I understand the court's concern about the defense counsel not joining in the request for a hearing. But I think that Remmer itself basically puts the burden on the court once there's a, once it's confronted with a prima facie case of jury tampering to hold. Remmer said 1954. Is that, when was Remmer decided? It's a very old case, right? Yes, I believe it is from the 50s. It's, yes, 54. So I believe that the court under Remmer had a duty once it has the information to make the inquiry necessary for it to determine whether or not there's prejudicial tampering. Right. And there's no one way to determine whether or not there's prejudice, though, is there? The court has a number of options available short of evidentiary hearing, doesn't it? Under Remmer, the, Remmer, as this court recognized in Ductile, mandates an evidentiary hearing. I think because it recognizes that you can't draw assumptions on what the, like, as the trial court in this case did. Like, I'm just going to assume that none of the other jurors were affected. They can come to us, quote, if they have a problem. That's not allowed by Remmer. Remmer says you have to have a hearing because you have to know the totality of the facts. And only then you can make a decision. I agree with Your Honor that there may be different ways that you analyze the facts you have once you have them. So is it your position that once there is some evidence of jury tampering that Remmer requires an evidentiary hearing in all cases? Yes. What is your best, clearly established Supreme Court case holding that what happened here was jury tampering rather than jury misconduct? Your Honor, I would say Remmer itself. Remmer talked in terms of whether the incident was the kind that would, I believe, using words like, I'm sorry, I believe it was Remmer 2 that said, is it the kind of thing that would leave somebody disturbed or troubled or distracted during jury deliberations? And I think by that definition, I think what we have here is tampering. Counsel, could I ask you, are you relying on Remmer 1 or Remmer 2 for your argument that it's clearly established law that an evidentiary hearing is required? Both. Remmer 1 establishes the general principle and then it's applied in Remmer 2. I don't think Remmer 2 necessarily adds anything to Remmer 1, but it certainly reinforces that principle. Could you point me to the language that you rely upon to say that an evidentiary hearing is required in all cases? Sure. It's... Are you looking at Remmer 1 or Remmer 2? Remmer 1. At the end of Remmer 1, the last paragraph, the trial court should not decide and take final action next party information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial in a hearing with all interest parties... It says hearing, but it doesn't say evidentiary hearing. Well, Your Honor, I think that, I mean, the way that I interpret it and the way this Court interpreted in Ducktell is that it means evidentiary hearing. And like I said, I think that that's clearly established. As the Court knows, it can look to its own case law to determine what's clearly established. And the way this Court has interpreted Remmer, I believe, establishes that a hearing is required. What's your citation for Ducktell? Ducktell is 192 F3d at 896. I see that I'm way over my time. You're way over your time, but I have another question. What is your best clearly established Supreme Court case holding that due process required the dismissal of juror number 7? That would be Frazier. Frazier, as a court, I believe the Sixth Circuit interpreted it in a case called Miller v. Webb. I'm asking about a Supreme Court case. Right, right. But I'm relying on Frazier, but the Sixth Circuit, I think, has adopted this view of Frazier, which says that it's really the duty of the court to make sure that a juror that is in any way suffering from bias does not remain on the jury. So I think that what you are saying... Well, suffering from bias is a question of that. Right. And that's why I would say, because we're talking about juror number 7, that given the application of the Remmer presumption and what the Court had about it at the time it had juror 7 in front of it, that it, because the presumption wasn't rebutted, it should have concluded that she had bias, and therefore, under Frazier, it's sort of sua sponte, dismiss her. I do want to say, both in response to your question and to Judge Warlaw's previous question, that the thing I want to emphasize is that clearly something went wrong here. If at any point the Court says that, well, the trial court didn't do anything wrong because the trial counsel failed to request the dismissal of juror 7 or failed to request a Remmer hearing, that just shifts the relief that Mr. Rabuti is entitled to the ineffective assistance of counsel claim. One way or the other, I think he deserves to have his habeas petition granted because one of those two entities failed him. Counsel, can I ask you, what do we do with the inclination or the information from the jury that she was not biased, that she could still fulfill her responsibility to look at the evidence and make her determination based on the evidence presented? What do we do with that information? I think it's certainly something the Court considers. It's certainly her own state of, her own reflection of her state of mind is certainly relevant evidence to consider as part of the whole. But I think that, and we cited cases in the brief that talk about how that's not enough because you also have to probe beyond that to see whether or not, you know, the person is suffering from the kind of influence that they might not even be conscious of or they might be reluctant to disclose. So while that is a relevant fact, it's not the only fact. And I think that that's where the trial court left it. And, counsel, my final question is, what do we do with the fact that United States v. Duke Kale was direct appeal as opposed to habeas? Does that guide us on habeas or do we need a case? Does that show us clearly established law if it's on direct appeal? I think it does because it is reviewing, it is relying entirely on Remmer and saying what Remmer means. So to the extent that it's defining what Remmer means, I think that's equally applicable to habeas cases. But it doesn't have the same standard of review that we have in habeas. Well, but I think that if the court reads DuckTel, it's really talking about we're applying Remmer. If it said something else, if it said we're extending Remmer, then that might call into question as to whether or not its pronouncements were reflecting clearly established law. But when it is just interpreting the Supreme Court case and saying here's what it means and now we're applying it, I think that it is applicable to habeas cases. But the court could also look at Caliendo v. California Men's Advisory Council, which is a habeas case that applied the Maddox-Remmer rule and granted relief under ADPA. All right, counsel. I'll offer the State its opportunity. Good morning, Your Honors. Bob Snyder, Deputy Attorney General for Warden Chappell. May it please the Court. Ten years ago this month, two courtroom spectators pull up alongside a juror in her car and they say, we saw you earlier. You could talk to us. We're not inside anymore, meaning in court. Are you going in that direction? This is the sum total of the attempt to converse with juror number seven. Now, is that true? Even during when she was questioned, she said that they had previously tried to converse with the jurors in the courtroom, including herself. Yes, that's fair, Your Honor. I think that occurred outside the courtroom before the jury was selected. That was my understanding of the record. But they, those very people, had previously tried to talk to the jurors. Yes, they did. And in both cases, the juror simply ignored them and walked away. On the road, she turned away. So the jurors behaved properly by not entering into the conversation. Absolutely. And that's why I, my ears perked up when Judge Nelson said, is a jury tampering or jury misconduct? I don't believe it's either. The district court called it potential jury tampering. And I think that's a fair characterization because what we have, based on what juror seven told the court, is an attempt at communication. And the reason that's important is because it implicates the precedent in the two Supreme Court cases, which are crucial to the habeas analysis. You know, Remmer has a very narrow holding, and it says at page 229 the following. In a criminal case, any private communication, contact, or tampering, directly or indirectly with a juror during a trial, and here's the key phrase in Remmer, which has gotten lost in the analysis, about the matter pending before the jury, is deemed presumptive repatriation. Well, you know what's interesting about that? That sort of ignores three things. It ignores the juror's decision to bring it to the attention of the judge, because she clearly thought it had something to do with the trial. Otherwise, why would she bring that to the attention of the judge? And the judge actually seemed to infer that because he questioned afterwards, because he questioned the people who were sitting in the courtroom to find out who they were, and whether they were affiliated with the defendant or the victim. And finally, when she was trying to explain it to the judge, I think it was the clerk said, you're talking too loud, everybody can hear you. Obviously, also inferring that it was about the case at hand. Everything the Court just said is correct, Your Honor, but I don't agree with counsel that the only reasonable inference is that these men wanted to talk about the case. But these are the three key people, the juror, the judge, and the courtroom deputy all made that inference. Well, to the extent Remmer requires a hearing, Your Honor, it happened. I mean, that was the hearing. So I don't think it's Remmer error to say call the juror in and let's talk about it. The prosecutor didn't seem to think they'd had a hearing. He kept asking the judge to interview all the jurors because of the issue of the other, the individuals in question having approached other jurors. And he wanted to get right to the bottom of it. And he seemed to be willing to risk a mistrial rather than have a situation of reversible error. I didn't have the impression, Your Honor, that it was because of the outside contact. I thought it was because she wanted to inquire whether other jurors had been affected by this juror. Right. Because this juror said she was uncomfortable and went so far as to alter her route home because she clearly was concerned that these people might follow her home. There's, Your Honor, I agree with the Court that it would have been better to have a more extensive hearing. But I think it's important to distinguish between trial error and, for habeas corpus purposes, whether the state court acted contrary to Supreme Court authority or whether it unreasonably applied to Supreme Court precedent. And, you know, we talked about Remmer. But the really relevant case I would submit to the Court is Smith v. Phillips because there the Second Circuit affirmed but didn't consider whether the juror was actually or impliedly biased. And the Chief Justice in Smith said very clearly the following. Defendant contended that a court cannot possibly ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question. And the Court continues. The Second Circuit said the law has to impute bias to the juror. And the Court said we disagree. And Smith v. Phillips, Your Honor, stands for the proposition that the juror's testimony is enough to establish impartiality. No question the juror said she was uncomfortable. And, you know, I would submit that every juror who's looking at a defendant accused of murder is somewhat uncomfortable. It's an uncomfortable role. But the issue is, was the discomfort so great that the jurors said she couldn't be fair? And repeatedly she said she could. And the Court accepted that. And defense counsel accepted it, even going so far as to say, you know what, let's not bring in the other jurors. Well, was that ineffective assistance of counsel? I don't think so, Your Honor. The district court suggested that there was good tactical reason for doing that, the reason being that he didn't want to forget the language in the record, but he basically didn't want to stir the pot and create more discomfort for the jury. And what about post-trial, when he made the post-trial motion for a new trial and failed to submit declarations from jurors to support that claim? Well, I think, Your Honor, it hinges on how seriously we view the conduct as to Juror 7. Anything that happened about her communication with the other jurors is going to be derivative. She didn't talk to these people. They tried to talk to her about what we don't know. But all the evidence in the record is that the jurors were saying, yeah, one juror said she told us about it, we told her don't talk to them, which is exactly what the trial court instructed the jurors to do. And in fact, the whole reason Juror 7 came forward was because the court admonished the jury very strongly to let me know if there were any problems. So in an excess caution, the juror comes forward and says, well, these men who were in the courtroom tried to talk to me. On the question whether due process requires dismissal of Juror 7, there is Supreme Court authority on the point. It's Smith v. Phillips. And the Chief Justice, I think, summed it up very well when he said the following. This is at 217 of Smith v. Phillips. It's virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and determine the effect of such occurrences when they happen. I would submit to the court that's what happened in this case. Had the judge not inquired of Juror 7, I think we would have a serious problem. But the judge did. The hearing took 26 pages. In court time, that's almost an hour. And every question under the sun among the judge, prosecutor, and defense jury was to ask of that juror. And she concluded, you know, I didn't like it. I don't want him to follow me home again, but I can be fair. If he's guilty, he's guilty. If he's not guilty, he's not guilty. Under Supreme Court precedent, Your Honor, which is the habeas test, and I think in fact the test that distinguishes Duckell, the trial court and the State courts following did not act contrary to Supreme Court authority because that authority, Rummer and Smith, is very limited as to the application here. Further, it wasn't an unreasonable application of Supreme Court precedent. Would the Court like me to address the procedural default issue? I don't. I've sufficiently briefed. Were there any other questions from the Court? It's time. Thank you, Your Honor. Okay. You have a minute. You were over, but it's mostly because of our questioning, so. Right. Well, since I went over, if the Court has any other questions, I'd be happy to address them. Otherwise, I'll submit. All right. Thank you very much. Moody v. Chappell is submitted. We'll take up Cohen.
judges: Nelson, Wardlaw, Rawlinson